**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Consuelo Stephanee Pena,<br><br>　　　　　　Defendant. | No. CR-19-00296-001-PHX-DJH<br><br>**ORDER** |

The Defendant has filed an Amended Motion for compassionate Release (Doc. 45), and the Government has filed a Response thereto. (Doc. 49). No Reply has been filed, and the time to do so has expired. The Court now issues its opinion.

**I.    Background**

The Defendant pleaded guilty to a lesser-included offense of Count Two of the Indictment, Possession with Intent to Distribute Heroin and Count Four, International Money Laundering on September 11, 2019. *See* (Doc. 24). In her plea agreement, she admitted to the following facts:

> On December 7, 2016, Dulce Gonzales-Rosillo[1] attempted to travel from the United States to Mexico to deliver drug proceeds to a person in Mexico. While traveling outbound through the Nogales Port of Entry, Customs and Border Protection Officers located $7,802 on Gonzalez-Rosillo's person and in her vehicle. I, Consuelo Stephanee Pena, knew that Gonzalez-Rosillo was going to be transporting money to Mexico, and I knew that the money was

---

[1] Gonzalez-Rosillo was convicted of Possession with Intent to Distribute One Kilogram of More of Heroin in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i), and sentenced to twelve-months and one day. (Doc. 60 in CR-18-01257-PHX-DLR).

> the proceeds of drug sales. Gonzalez and I were being paid to transport the drug proceeds to Mexico, and we would split the fee. I provided Gonzalez-Rosillo with my debit card so that she could withdraw the money and transport it to Mexico.
>
> On April 17, 2017, I had contact with the Phoenix Police Department officers in front of my residence in Phoenix, Arizona. While speaking to officers, I sent text messages to my boyfriend, Armando Hernandez-Sepulveda and warned him officers were trying to get into the house and he should escape out the back. Hernandez texted me back and told me he had thrown a bag over the fence. Officers obtained our text messages and were able to locate the bag, which was found to contain 2,003 grams of cocaine, 9,043 grams of heroin, and 84.45 grams of fentanyl. I knew the drugs were inside the house, and I texted Hernandez to aid him in hiding the drugs so that they would not be found by law enforcement.

(*Id*. at 8). The parties agreed that the Defendant's sentence would not exceed the low-end of her sentencing guideline range. (*Id.* at 3). Further, in the plea agreement, the Government agreed to dismiss Counts One and Three of the Indictment. (*Id*. at 5).

On March 9, 2020, this Court committed the Defendant to the custody of the Bureau of Prisons ("BOP") for fifty-one months on Count Two and fifty-one months on Count Four to be served concurrently. (Doc. 37). She was also ordered to serve three years on supervised release on each count of conviction to run concurrently. (*Id*.)

In her pretrial proceedings, on March 28, 2019, the Defendant was detained as a flight risk and a danger. (Doc. 15). Thus, she received credit for time-served, beginning on that date, for her BOP custody term. As of the date of this Order, she has spent just over twenty months in federal custody. Her projected release date is November 7, 2022. Since her arrest, she has been housed in the Core-Civic Women's Detention Center in Florence, Arizona. She has yet to be designated to a BOP facility.

The Defendant brings her Motion for Compassionate Release due to the COVID-19 pandemic, arguing that her health conditions and the 18 U.S.C. § 3553(a) factors satisfy the requirements of extraordinary and compelling reasons for her release.

/ / /

## II. Legal Standards

### a. Exhaustion of Administrative Remedies

The Defendant brings her Motion pursuant to 18 U.S.C. § 3582(c)(1)(A), recently modified by the First Step Act of 2018. *See* Pub. L. No. 115-391, § 603. That statute provides that a district court "may not modify a term of imprisonment once it has been imposed" unless the Congressionally mandated exception is present. 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824–25 (2010). That exception is present when either the motion to modify sentence is brought by the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal[.]" 18 U.S.C. § 3582(c)(1)(A) (emphasis added). The statutory language is unambiguous and not waivable. *See United States v. Weidenhamer*, 2020 WL 1929200 *2 (D. Ariz. Apr. 21, 2020) ("If the statutory language contains mandatory language . . . a court may not excuse a failure to exhaust.") (citing *Ross v. Blake,* 136 S. Ct. 1850, 1858 n.2 (2016)). Thus, the Court may not consider a defendant's motion without proof that she meets this exhaustion requirement.

### b. Extraordinary and Compelling Reasons

If a defendant has exhausted her administrative remedies, she may bring a motion to the district court that extraordinary and compelling reasons nonetheless warrant her release. The First Step Act references the sentencing commission's policy statement for what should be considered an extraordinary and compelling reason. Sentencing guideline section 1B1.13 n.1 defines "extraordinary and compelling reasons" for compassionate release. It includes considerations of 1) a defendant's serious advanced illness or medical condition; 2) whether the defendant is at least 65 and experiencing physical or mental health problems due to his/her advanced age, and the length of time incarcerated; 3) specific family circumstances; and 4) other reasons as determined appropriate by the Director of the BOP. *See* U.S.S.G. § 1B1.13 cmt. 1(A)–(B). The sentencing commission has not altered its guidance since the First Step Act was amended, thus, courts may independently determine whether such other reasons are present on a case-by-case basis

and without deference to the BOP.  *See United States v. Carter* 2020 WL 3458598, at *4 n.3, n.4 (D. Ariz. June 25, 2020) (citations omitted).

In considering motions for compassionate release, the Court must also "consider [ ] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c).  Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims."  *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).  A court should not grant a sentence reduction unless it determines that the defendant is not a danger to the safety of any other person or to the community.  *See* U.S.S.G. § 1B1.13(2); *see also United States v. Baye*, 2020 WL 2857500 *10 (D. Nev. June 2, 2020) (citing cases). Therefore, the Court must find both extraordinary and compelling reasons for compassionate release *and* that the 3553(a) factors support such release.  *See United States v. Ruelas*, 2020 WL 5645093, *2 (D. Ariz. Sept. 22, 2020) (citations omitted).

**I.     Analysis**

    **a.  Exhaustion of Remedies**

The parties agree, as does the Court, that the Defendant is unable to exhaust her administrative remedies through the BOP because she is not within their physical custody. (Doc. 45 at 10); *see also* (Doc. 49 at 7). Although this Court finds that the exhaustion of administrative remedies under the First Step Act is jurisdictional, in this circumstance, the Defendant has no available remedy. *See United States v. Van Dyke*, 2020 WL 1811346 *2 (E.D. Wash. Apr. 8, 2020) ("Defendant is not in the custody of the BOP.  Therefore, there is no warden to petition  . . . [a]ny attempts to exhaust administrative remedies would be futile.").  Futility is an exception to the exhaustion requirement.  *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004) ("exceptions to the general rule requiring exhaustion cover situations such as where administrative remedies are inadequate or not efficacious,

pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceeding would be void.") (citation omitted). Therefore, the Defendant has no available means to have a compassionate release review pursuant to a BOP process. In these circumstances, the Court finds that her Motion is properly directed to this Court.

### b. Extraordinary and Compelling Reasons

The parties also agree that the Defendant's current health conditions, in particular her obesity, meet the "extraordinary and compelling" reasons making her eligible for compassionate release. (Doc. 49 at 7 n.2) ("Although Pena's BMI is ever-so-slightly below the CDC Threshold for obesity, the United States concede [sic] her self-described condition of obesity."). The Court is not so persuaded. The Defendant is thirty-years-old, has severe asthma, is anemic, and has vaginal cysts and fibroids. She claims that "such factors increase [her] risk of serious harm from COVID-19 were she to contract the virus." (Doc. 45 at 2). However, according to the Centers for Disease Control and Prevention ("CDC"), individuals who have moderate to severe Asthma, and who are overweight, with a Body Mass Index of greater than 25kg/m, but less than 30 kg/m, "*might be* at an increased risk for severe illness from the virus that causes COVID-19" (emphasis added).[2] None of the Defendant's other health issues (anemia, vaginal cysts and fibroids) are listed as medical conditions or risks for COVID-19. Thus, her reported health conditions do not reflect that she "is suffering from a serious physical or medical condition" as contemplated by section U.S.S.G. § 1B1.13.

The Court is aware that Core-Civic has had inmates who have tested positive for COVID-19 and that it has continued to incorporate the CDC guidance for detention centers to curb the spread. Both parties also provide general information about COVID-19 in the federal BOP, the rates of national infection and how the BOP is currently working to address the virus. *See* (Doc. 45-1) (Decl' of Brie Williams, M.D.). In addition, the

---

[2] *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 2, 2020).

Government states that as of mid-October, 386 inmates have tested positive for COVID-19 at Core-Civic, two resulting in death. (Doc. 49 at 9). However, the Government asserts that given the increased rates of COVID-19 occurring outside of CoreCivic, there is no evidence that the Defendant will not be exposed to the virus if she is released. (*Id*. at 9–10). This point is not overlooked. Although, the Court recognizes that the infection of any inmate is concerning, a general concern over contracting the disease is insufficient legal cause for compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020).

Moreover, without explanation, the Defendant claims that "[f]acilities such as CCA Florence and the BOP facilities are also unable to provide appropriate medical care to those most at risk." (Doc. 45 at 2). Yet, her medical records reflect that she has received medical care, treatment and prescription medications on multiple occasions. *See* (Doc. 45-2). And, as the Government notes, her medical conditions are not new, but rather they are conditions she has had since 2015. (Doc. 49 at 9).

Having consider the Defendant's age, her specific health concerns, and the guidance set forth in U.S.S.G. § 1B1.13, the Court finds that she does not meet the criteria for extraordinary and compelling reasons to be released. The Court will nonetheless address the 3553(a) factors and whether she poses a danger to any person or the community.

### c. The 3553(a) Factors

The Defendant states that she has accepted full responsibility for her conduct and that she "is committed to never [repeat] anything like this again." (Doc. 45 at 24). She states that while incarcerated, she has enrolled in numerous classes for rehabilitation thus reducing the risk of further engaging in criminal activity. (*Id*.) She further states that she has a supportive family and a place to reside upon her release. (*Id*. at 5). Thus, she argues that she is not a danger to anyone. The Government disagrees.

The Government asserts that the Defendant's conduct in distributing cocaine, heroin and fentanyl put the public at risk. (Doc. 49 at 8). The Government argues that the nature and circumstances of her crimes and the need for deterrence are critical factors. (*Id*.) They

remind the Court that her acts involved working for Mexico-based drug traffickers, recruiting others to deposit drug proceeds into her former boyfriend's bank account, picking up drug proceeds and permitting her own bank account to be used to launder money from drug trafficking. The Government also states that her sentence reduction would result in unwarranted disparity when compared to her co-conspirators. (*Id.*)

The Defendant was sentenced by this Court just nine months ago. Therefore, the Court's consideration of her 3553(a) sentencing factors remain the same. The Defendant's final adjusted sentencing guideline range was eighty-seven to one hundred eight months. The Court imposed a sentence well below the low-end of her sentencing guideline range based on a downward variance related to her youth history and characteristics. *See* (Doc. 45 at 4–5). However, the Court expressed concern about the history of the Defendant's involvement with drug trafficking and money laundering. It is clear that she had long and close ties to individuals involved in trafficking illegal drugs from Mexico into the United States.

Furthermore, the Court noted at sentencing, as it does now, that the Defendant's encounter with law enforcement at the Nogales Point of Entry in December 2016, did nothing to deter her from engaging in illegal drug activity in April 2017. The Court also noted that she was gainfully employed at the time she engaged in her crimes of conviction. Thus, the Court imposed a sentence to reflect the seriousness of her conduct, to promote respect for the law, as just punishment for her conduct, and to deter her from repeating such conduct. Moreover, given her role in the offense, a reduction in her sentence would result in an unwarranted sentencing disparity when compared to her co-defendants. *See* (Doc. 49 at 8). Consequently, given that she has only served twenty months of a fifty-month sentence, the 3553(a) factors remain substantially the same. The Court finds that the Defendant does not meet the criteria for extraordinary and compelling reasons for release.

/ / /

/ / /

/ / /

Accordingly,

**IT IS ORDERED** denying the Defendant's Amended Motion for Compassionate Release.  (Doc. 45).

Dated this 4th day of December, 2020.

_____
Honorable Diane J. Humetewa
United States District Judge